IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Rebecca Whittington, ) | C/A No.: 0:11-1501-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Variety Wholesalers. Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, plaintiff Rebecca Whittington ("Plaintiff") is suing her former employer Variety Wholesalers Inc. ("Defendant"). Plaintiff alleges a pregnancy wrongful discharge claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Her amended complaint also references claims of sexual harassment and retaliation.

This matter comes before the court on the motion for summary judgment filed by Defendant on January 20, 2012. [Entry #23]. Plaintiff filed a response to the motion on February 7, 2012 [Entry #26], and Defendant filed a reply on February 17, 2012. [Entry #27]. This motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that

follow, the undersigned recommends the district court grant the motion for summary judgment.

I.   Factual and Procedural Background

Plaintiff began working for Defendant, an owner and operator of retail stores, as an at-will employee on April 10, 2009. [Entry #26-2 at 16, 21]. She was initially hired to work at the Super Dollar store in Lugoff, South Carolina ("Lugoff store"), and was subsequently transferred to the Super 10 store in Winnsboro, South Carolina ("Winnsboro store") on August 2, 2009, where she became the store manager in training. [*Id.* at 19–20, 22; Entry #23-6 at 2].

The Winnsboro store was part of Defendant's "small" stores division, which involves stores smaller than 10,000 square feet. [Entry #23-3 at ¶ 4]. The business model is "low overhead, low payroll, and cheap prices on goods." *Id.* The Winnsboro store was staffed with Plaintiff as manager, assistant manager Latoya Jacobs ("Jacobs"), one part-time stocker, and two or three cashiers. [Entry #26-2 at 27–28, 34]. Plaintiff also trained Gretchen Sims ("Sims"), a manager in training, for approximately one month in the fall of 2009. *Id.* at 29.

Plaintiff worked from approximately 8:00 a.m. to 6:30 p.m. six days a week. *Id.* at 31–32. Once a week, a truck would deliver merchandise to the store. The merchandise was unloaded into the stockroom located in the store's basement. *Id.* at 32–33. Although Plaintiff had a stocker to help unload the truck, the stocker often failed to show up. [Entry #26-4 at 12]. Even when the stocker was present, Plaintiff was required to be in the basement for the 30 minutes it took to unload the truck. [Entry #26-2 at 34].

2

According to Plaintiff, all stock was to be taken upstairs and put out on the sales floor within 48 hours of the weekly merchandise delivery. *Id.* at 34–35. Plaintiff's direct supervisor, Thomas Miller ("Miller"), testified that company policy required that all inventory be unloaded and put onto the store shelves within 24 hours of delivery. [Entry #26-3 at 30].

Plaintiff estimated she found out she was pregnant in late July or early August of 2009 when she took a pregnancy test at work.[1] [Entry #26-2 at 36, 40]. Plaintiff claims she notified everyone in the store of her pregnancy the day she found out and told Miller when he visited the store the next day. *Id.* at 40. Plaintiff recalls Miller congratulating her upon hearing of her pregnancy. *Id.* at 41.

In late 2009, Plaintiff told Miller and other co-workers that she had a pregnancy-related, 25-pound lifting restriction. [Entry #26-2 at 44; #26-3 at 16; #26-6 at 17]. Plaintiff also allegedly stated she could not go up or down stairs. [Entry #26-3 at 16]. Per company policy, Miller claims he asked Plaintiff for a doctor's note to document her restrictions, but testified that she never provided one. [Entry #26-3 at 16, 21–22]. Jacobs, the store's assistant manager, recalls Plaintiff stating she could not climb stairs and being asked for a doctor's note. [Entry #26-6 at 17–18]. Plaintiff claims she never stated that she was unable to go up and down steps or that she was asked for a doctor's note regarding her restrictions. [Entry #26-2 at 43, #26-9 at ¶¶ 1–3].

---

[1] Based on Plaintiff's due date of June 3, 2010 [Entry #26-2 at 39], Plaintiff must be mistaken regarding those dates as the earliest Plaintiff could have learned of her pregnancy is late September 2009.

Plaintiff was promoted to manager on December 6, 2009. *Id.* at 58–59. She was terminated on January 6, 2010. [Entry #26-2 at 47.] She claims Miller came to the store that day and told her that "he hated to do it," but due to her pregnancy restrictions "he had to terminate [her] effective immediately." *Id.* Miller testified that he was instructed by Defendant's human resources department to terminate Plaintiff because she could not perform the essential functions of her job. [Entry #26-3 at 27, 36]. Miller invited Plaintiff to reapply with Defendant after she had her baby and her pregnancy restrictions were gone. [Entry #26-2 at 52.] After Plaintiff's termination, Gretchen Sims took over as manager of the Winnsboro store. *Id.* at 58.

Defendant did not provide any maternity leave other than under the Family and Medical Leave Act ("FMLA"). *Id.* at 48. Plaintiff did not qualify for leave under the FMLA at the time of her termination because she had not yet been employed by Defendant for one year. *Id.*

Plaintiff did not reapply for her position after she delivered her baby in June 2010. *Id.* at 55. She claims to have looked for a job from about one week after her termination in January 2010 up until she had the baby. *Id.* at 62. Plaintiff now describes herself as a stay-at-home mom, but claims she continued looking for work after her baby was born. *Id.* at 62–63. As of her deposition in December 2011, Plaintiff had not looked for work in approximately four months. *Id.* at 66.

Plaintiff filed the complaint in this case in South Carolina state court on April 28, 2011 [Entry #1-4], and Defendant removed it to this court on June 20, 2011. [Entry #1]. Plaintiff alleges she was discriminated against because she was discharged for

4

pregnancy-related restrictions. [Entry #1-2]. She does not contend that anyone working for Defendant made any slurs or inappropriate comments about her being pregnant. [Entry #26-2 at 82.]

II. Discussion

A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing

5

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B. Analysis

1. Pregnancy Discrimination Claim

Plaintiff alleges that she was wrongfully terminated because of her pregnancy in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).

In 1978, Congress passed the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"). The PDA made clear that Title VII encompassed pregnancy-based discrimination. A pregnancy discrimination claim is analyzed in the same fashion as any other sex discrimination claim brought pursuant to Title VII. *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 297 (4th Cir. 1998).

Because Plaintiff lacks any direct evidence of pregnancy discrimination, she proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4)

her position remained open or was filled by a similarly-qualified person outside the protected class.[2] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). If Plaintiff establishes the prima face case, the burden then shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant meets its burden of production, the presumption created by the prima facie case "drops out of the picture," and the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the asserted reasons for the challenged employment actions were pretextual. *St. Mary's*, 509 U.S. at 510–11, 515–17; *Hill*, 354 F.3d at 285. At this point, the burden to demonstrate pretext "merges with the ultimate

---

[2] Defendant's recitation of the elements of a prima facie case of discrimination, which is restated verbatim by Plaintiff in her reply brief, incorrectly replaces the fourth element articulated in *Hill* with a requirement that Plaintiff demonstrate "she was treated differently than similarly situated employees outside of the protected class." [Entry #23-1 at 9; #26-1 at 12]. The cases the parties cite in support of this proposition are unavailing. In fact, the Fourth Circuit case of *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005), cited by the parties states, "[i]t is thus clear that the law in this circuit is that, as a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case." *Id.* at 486. While the *Miles* court articulates some exceptions to this general rule, those exceptions have not been advanced by the parties and do not apply to the facts of this case. Consequently, to establish a prima facie case of pregnancy discrimination, Plaintiff must demonstrate that her position was left open or was filled by someone who was not pregnant. *Id.* at 490 (holding that "for purposes of establishing a prima facie case of pregnancy discrimination, the protected class is pregnant women, not all women"). It is not necessary for Plaintiff to show she was treated less favorably than similarly situated employees who were not pregnant. Consequently, Defendant's argument that summary judgment should be granted because Plaintiff failed to make such a showing is disregarded by the undersigned.

burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1974).

In a pregnancy discrimination case, the plaintiff thus bears the ultimate burden of establishing that the defendant discriminated against her "because of" her pregnancy. *DeJarnette*, 133 F.3d at 297 (citing 42 U.S.C. §§ 2000e–2(a)(1) & (2) (1994)).

### a. Prima Facie Case

Defendant argues Plaintiff is unable to establish her prima facie case because although she was pregnant at the time of her termination, she cannot demonstrate that she was performing satisfactorily. [Entry #23-1 at 10].

In support of its motion, Defendant cites the testimony of Plaintiff's manager, Miller, that approximately 60% of Plaintiff's job duties were physical in nature. [Entry #26-3 at 17]. Miller testified that Plaintiff was unable to do essential job functions such as lifting boxes over 25 pounds and going up and down stairs. *Id.* at 16–18, 26. As a result, the inventory in Plaintiff's store was getting backed up and the store "started to slide downhill." *Id.* at 26, 29. Miller testified that he had an additional worker from Defendant's store in Bishopville ("Bishopville store") help Plaintiff get her store's inventory caught up. *Id.* at 18. Although Plaintiff claims in an affidavit attached to her response brief that no employee was ever required to come from the Bishopville store to help with catching up on inventory, Defendant produced in reply an expense report record from Gretchen Sims documenting five dates on which she traveled to Winnsboro to "help[] out in another store." [Entry #27-5 at 4]. Carol Dean ("Dean"), the then-manager of the Lugoff store recalls personally going to Plaintiff's store on several

occasions to help clean it up during November and/or December 2009. [Entry #27-4 at ¶ 7]. She recalls the store being a "dirty mess" and considered the store to be in "terrible shape." *Id.*

Further, during November 2009, the store managers within Miller's districts held the Reindeer Run competition in which they traveled to and evaluated each other's stores. [Entry #26-3 at 22; #27-4 at ¶ 8]. Miller testified that when they visited Plaintiff's store, the end caps did not include the proper merchandise, the store had not been straightened properly, and it was not adequately prepared for Christmas. [Entry #26-3 at 22–23]. Sandra Lowry ("Lowry"), manager of Defendant's store in Lumberton, North Carolina, accompanied Miller and the store managers on the Reindeer Run. She recalls Plaintiff's store being "dirty and not well maintained." [Entry #27-5 at ¶ 9]. Despite Plaintiff's contention that she was awarded the "best stockroom" superlative in the Reindeer Run [Entry #26-1 at 10; #26-9 at ¶ 15], Lowry and Dean both recall that Plaintiff's store did not win any awards and produced score sheets documenting the stores that won in each category of the competition. [Entry #27-5 at ¶ 12; #27-4 at ¶ 11]. The score sheets indicate that Plaintiff's store was nominated as "Best Stockroom store" when compared against two other stores visited the same day, but it did not win the overall competition in that category when compared to two other stores in Miller's district. [Entry #27-5 at 7; #27-5 at ¶¶ 10–12].

In response to Defendant's argument that Plaintiff was not satisfactorily performing her job at the time of her termination, Plaintiff argues that none of the problems asserted by Defendant existed. [Entry #26-1 at 13]. She states that her alleged

9

deficiencies were not supported by her work record and are outright refuted by Plaintiff, Sims, Jacobs, and cashier Anna Nichols. *Id.* Plaintiff admits she could not do any heavy lifting while pregnant, but denies the inventory was backing up and the store was unkempt. *Id.* at 12–13. She contends she performed her job to standard through delegation, breaking boxes down, and exerting herself. *Id.* at 12. According to Plaintiff, there is "no evidence that she demonstrated poor performance." *Id.* at 13.

In support of her contention that she was satisfactorily meeting all job requirements, Plaintiff relies primarily on her self-assessment of her performance as well as the assessment of two co-workers, Sims and Nichols. With respect to opinion testimony, the Fourth Circuit has repeatedly explained that a plaintiff's perception of herself is not relevant. *See DeJarnette*, 133 F.3d at 299; *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996). Likewise, the opinion of a plaintiff's co-workers that "[she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant." *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 235 (4th Cir. 1991) (footnote omitted). Consequently, the testimonial evidence relied upon by Plaintiff is unavailing.

To the extent the proffered opinion evidence does have any relevance, Defendant has provided compelling evidence in rebuttal. For example, Sims' affidavit provides that while she was manager at the Bishopville store, she never sent any of her employees to Winnsboro to assist with inventory. [Entry #26-10 at ¶ 4]. While this may be true, the expense report provided by Defendant documents that Sims herself went to Winnsboro to

help with the store. [Entry #27-5 at 4]. In addition, Defendant has produced the affidavits of Dean and Lowry regarding the condition of Plaintiff's store.

Plaintiff has produced no evidence other than her own opinion testimony and that of her co-workers to demonstrate she was satisfactorily performing her job. For this reason, the undersigned recommends finding that Plaintiff failed to establish the second elements of her prima facie case and granting summary judgment to Defendant. *See Bell v. Cabela's, Inc.*, No. 5:08CV5, 2009 WL 902266, at *4–5 (N.D. W. Va. April 1, 2009) (granting defendant's motion for summary judgment where plaintiff could not meet the lifting requirements of her job due to pregnancy and thus could not satisfy the second element of a prima facie claim of pregnancy discrimination).[3]

b. Evidence of Pretext

Even if the court assumes that the prima facie case is satisfied, Plaintiff cannot overcome her burden under *McDonnell Douglas*. Defendant has offered a legitimate reason for terminating Plaintiff: her admitted 25-pound lifting restriction, her inability to go up and down stairs, her failure to timely process inventory, and the unkempt state of

---

[3] As a result of citing the incorrect elements of a prima facie case of pregnancy discrimination, neither party has addressed whether Plaintiff has demonstrated that her position remained open or was filled by a similarly-qualified individual outside of the protected class after she was terminated. The evidence in the record shows that Plaintiff was replaced by Gretchen Sims. [Entry #26-4 at 18]. There is no evidence to indicate whether Ms. Sims was pregnant at the time she became manager of the Winnsboro store. Consequently, the undersigned concludes that Plaintiff has failed to satisfy the fourth element of a prima facie case of pregnancy discrimination. However, because the record likely would have noted if Ms. Sims had been pregnant and given the parties' confusion regarding the elements, the undersigned does not rely on Plaintiff's failure to establish this element in recommending that Defendant's motion for summary judgment be granted.

her store. The undersigned submits this explanation, discussed in detail above, is sufficient to shift the burden to Plaintiff, who must show that the legitimate reasons offered by Defendant were not the true reasons, but were a pretext for discrimination.

To establish pretext, the plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct." *DeJarnette*, 133 F.3d at 298 (quoting *Jiminez v. Mary Washington College*, 57 F.3d 369, 377–78 (4th Cir. 1995) and *St. Mary's Honor Ctr.*, 509 U.S. at 515). Plaintiff has not satisfied either prong.

While the Plaintiff may not agree with Miller's assessment of how she ran the Winnsboro store, "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez*, 57 F.3d at 377. Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 F. App'x 731, 733 (4th Cir. 2004) (citing *Smith v. Univ. of N. Carolina*, 632 F.2d 316, 346 (4th Cir. 1980)). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory." *Id.* (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156–57 (2d Cir. 1978).

Plaintiff has presented no evidence that Defendant's decision to terminate her was other than because she was unable to complete the essential functions of her job, most notably ensuring the inventory was put on the sales floor in a timely manner and the store was kept tidy. Defendant has offered the testimony of three witnesses who described the less-than-optimal conditions at the Winnsboro store. Even though Plaintiff disputes

Defendant's assertion that she was not adequately processing the inventory and maintaining the store, she has presented no evidence that Defendant's management did not honestly believe and rely on their good faith belief that Plaintiff was not performing the essential functions of her job. Plaintiff has no evidence to cast doubt on this legitimate, non-discriminatory reason for her discharge.

> The court's only concern is:
>
> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette*, 133 F.3d at 299 (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410–411 (7th Cir. 1997)).

Plaintiff fails to offer sufficient evidence of pretext and pregnancy discrimination. Most significantly, Plaintiff's proffered evidence merely supports her contention that she was a good employee and was satisfactorily performing her job. She provides no evidence demonstrating, or even suggesting, that Defendant's decision to terminate her was based on anything other than the legitimate reasons identified by Miller. Accordingly, Plaintiff has failed to establish as a reasonable probability that Defendant's stated rationale for termination was either false or pretextual for discrimination. *DeJarnette*, 133 F.3d at 299 (employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination).

In sum, nothing in the evidence or arguments presented rebuts Defendant's legitimate reason for terminating Plaintiff. Plaintiff has failed to provide any evidence that pregnancy discrimination was the real reason for her termination instead of the reasons cited by Defendant. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). There is no evidence from which a reasonable jury could conclude Plaintiff is entitled to a verdict. Therefore, the undersigned recommends Defendant's motion for summary judgment be granted as to Plaintiff's Title VII claim for pregnancy discrimination.

2. Sexual Harassment and Retaliation

Plaintiff's amended complaint suggests that she is also asserting claims of sexual harassment and retaliation by referencing them in the heading of her first cause of action. [Entry #1-2 at 1]. Defendant moved for summary judgment on these claims on the grounds that Plaintiff asserted no factual allegations to support them in the body of her amended complaint and testified at her deposition that she was not trying to assert such claims. [Entry #23-1 at 18]. In her response, Plaintiff consented to summary judgment on these claims, noting that their inclusion in the amended complaint was a scrivener's error. [Entry #26-1 at 15]. Consequently, the undersigned recommends granting summary judgment to Defendant on Plaintiff's claims of sexual harassment and retaliation.

3. Mitigation of Damages

Because it is recommended that summary judgment be granted, the undersigned finds it unnecessary to substantively address Defendant's request that, in the event Plaintiff's pregnancy discrimination survives summary judgment, the court enter summary judgment for Defendant on the issue of back pay and front pay due to Plaintiff's alleged failure to mitigate. [Entry #23-1 at 18]. The undersigned recommends dismissing Defendant's mitigation argument as moot.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #23] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 3, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).